### ABE MULKEY v. THE STATE.

No. 4675.   Decided February 6, 1918.

1.—Quarantine—Live Stock Sanitary Commission—Information—Delegation of Power.

The contention of defendant, upon trial for violating a quarantine order by the Live Stock Sanitary Commission, etc., that the information charged no offense, because it charges the violation of an order prescribed by the Live Stock Sanitary Commission and not an Act of the Legislature, and that the Legislature can not delegate the lawmaking power to said Commission in violation of section 1, article 3, of the Constitntion, is untenable.

2.—Same—Constitutional Law—Local Option Law—Legislative Power.

Under article 16, section 23, of the Constitution of Texas, the Legislature can pass any law for the regulation of live stock and the protection of the stock raisers in any part of the State, affecting any given locality, and make it effective with or without submitting it to a vote.   Following Ex parte Thompkins, 47 Texas Crim. Rep., 356, and other cases.

3.—Same—Statutes Construed—Live Stock Sanitary Commission—Quarantine.

Under article 7312 et seq., Revised Civil Statutes, the Live Stock Sanitary Commission is created and its duties and powers prescribed and it is empowered to establish, maintain and enforce such quarantine lines and sanitary rules as it may deem to be necessary in any district, county or part of county within this State, promulgate rules, regulations, etc., and that it shall be unlawful thereafter to move any live stock from any quarantine district, county, or part of county or premises to any other district, etc., in any other manner except as prescribed by said Commission and proclaimed by the Governor.

4.—Same—Police Regulations—Domestic Animals—Contagious Disease.

The authority of the Legislature to enact laws for the protection of domestic animals and to prevent the spread of infectious or contagious diseases among them is everywhere recognized as a valid exercise of the police power of the State, and under the commerce and police powers both the Federal and State governments may pass quarantine laws for the purpose of isolating diseased and suspected cattle.

5.—Same—Legislative · Power—Commissions—Delegation of Legislative Functions.

It is within the power of the Legislature to confer upon officers or commissions authority to execute the law and to adopt all needful regulations to that end, and legislation of this character is not a delegation of legislative functions, and the State has the power to provide punishment for those who violate the law.

Vol. 83 Crim.-1

6.—Same—Information—Live Stock Sanitary Commission—Proclamation of Governor.

Under these authorities, we think the authority given to the Texas Live Stock Sanitary Commission to quarantine live stock and to adopt rules and regulations to enforce the same, when properly proclaimed by the Governor, is not the exercise of legislative function by the Commission, and the rules and regulations properly so promulgated are valid and the violation thereof may be made an offense, which results that the indictment thereunder is valid.

7.—Same—Quarantine Law—Tick Eradication—Governor's Proclamation—Judicial Knowledge.

It has been correctly held under said tick eradication and quarantine law that the court and jury had to take judicial knowledge of the Governor's proclamation proclaiming said quarantine, and the rules and regulations adopted by said Live Stock Sanitary Commission, and that it is not necessary to prove them. Following McGee v. State, ·81 Texas Crim. Rep., 210, 194 S. W. Rep., 951, and other cases.

8.—Same—Proclamation by Governor—Regulations of Commission.

However this court, and no other, is bound to take judicial notice of any rules and regulations adopted by the said Commission, which have not been proclaimed by the Governor, and where such proclamation in no way proclaimed any rule or regulation which had been adopted by said Commission, the courts are not bound to take judicial notice thereof.

9.—Same—Case Stated—Proclamation by Governor—Rules and Regulations—Sanitary Commission—Charge of Court.

Where the proclamation of the Governor did not proclaim or purport to proclaim that any or either of said rules and regulations had been adopted by said Live Stock Sanitary Commission, but without any regard to the Commission or any action by it simply stated that certain counties are thereby declared to be under special quarantine, etc., the same was insufficient and a charge of the court instructing the jury that said rules and regulations were in force and effect in said counties, etc., is reversible error.

Appeal from the County Court of Concho. Tried below before the Hon. James E. Howze.

Appeal from a conviction of· a violation of the rules. and regulations of a quarantine order by the Live Stock Sanitary Commission; penalty, a fine of fifty dollars.

The opinion states the case.

*L. J. Wardlaw,* for appellant.—On question of the delegation of legislative power: State v. Swisher, 17 Texas, 441; Willis v. Owen, 43 id., 41; O'Neal et al. v. Bush et al., 177 S. W. Rep., 953; Lyle v State, 193 S. W. Rep., 680; Ex parte Mode, 77 Texas Crim. Rep., 432, 180 S. W. Rep., 708; Cooper v. State, 8 S. W. Rep., 654.

On question of refusal of requested charges: Robinson v. State, 60 Texas Crim. Rep., 592, 132 S. W. Rep., 944; Tucker v. State, 59 Texas Crim. Rep., 291, 128 S. W. Rep., 617; Briscoe v. State, 196 S. W. Rep., 183.

*E. B. Hendricks,* Assistant Attorney General, for the State.—Cited McGee v. State, 194 S. W. Rep., 951, and cases cited in opinion.

PRENDERGAST, JUDGE.—Appellant was convicted of violating a quarantine order by the Live Stock Sanitary Commission for the eradication of ticks.

The complaint and information are very complete. They allege a proper election in said county on September 18, 1915, ordered by the commissioners court upon the petition of the necessary qualified voters for the eradication of ticks; that the election was carried and so declared by the commissioners court; an order by that court duly made and duly published; that the county judge of said county properly notified the Live Stock Sanitary Commission of the result of said election and that said Commission caused to be issued a supplemental proclamation by the Governor proclaiming a quarantine around said county; that tick eradication was properly begun under said proclamation on February 14; that said Commission promulgated and the Governor proclaimed the rules and regulations known as order III, and effective February 15, 1917, for the certification, treatment and handling of live stock into, within, or from a special quarantined area of which said county was a part, said order being as follows: "It shall be unlawful for any cattle, . . . to be moved into, within or from said area until they have been inspected and certified to by an inspector of the Live Stock Sanitary Commission or the United States Bureau of Animal Industry. Inspectors shall not issue certificates on such live stock moved within or from said area unless they have been dipped—one dipping if free of ticks and two or more dippings with an interval of at least seven days where they are infected with ticks," and that on February 27 ·appellant did unlawfully move, and cause same to be done, from a point in said Concho County into certain premises in Runnels County, which was a part of said area, certain cattle without first having them inspected and certified to by an inspector of said Commission or United States Bureau of Animal Industry, showing them to be free from infection, and that said cattle had not been dipped according to said order, the said tick eradication law and said rules and regulations of said Live Stock Sanitary Commission being in full force and effect in said county.

Appellant contends, in substance, that the information charges no offense because it charges the violation of an order prescribed by the Live Stock Sanitary Commission and not an Act of the Legislature, and that the Legislature can not delegate the lawmaking power to said Commission in violation of section 1, article 3, of the Constitution.

Article 16, section 23, of the Constitution, expressly authorizes the Legislature to pass laws for the regulation of live stock and the protection of stock-raisers in any part of the State, and that it may exempt from the operation of said laws other portions, sections or counties. That section also provides for submitting any such law to a vote of the people to be affected thereby. Under this provision of the Constitution both the civil courts and this court have held that the Legislature can pass any such law affecting any given locality in the State and make it

effective with or without submitting it to a vote.   Armstrong v. Traylor, 87 Texas, 598; Graves v. Rudd, 65 S. W. Rep., 63; Brazeale v. Strength, 196 S. W. Rep., 247; McGee v. State, 194 S. W. Rep., 951; Ex parte Thompkins, 47 Texas Crim. Rep., 356; Roberson v. State, 42 Texas Crim. Rep., 595, and other cases.

The law of this State (article 7312 et. seq., Revised Statutes), created our Live Stock Sanitary Commission and prescribes its duties and powers.   Under that law the said commission was "authorized and empowered to establish, maintain and enforce such quarantine line and sanitary rules as it may be necessary . . ., quarantine any district, county or part of county, within this State when it shall determine the fact that cattle or other live stock in such district, county or part of county are affected . . . to make and promulgate rules and regulations which shall permit and govern inspection . . . treatment, handling and method and manner of delivery and shipment of cattle and other live stock from a quarantined district, county or part of a county or any other district . . . shall give notice of such rules and regulations by a proclamation issued by the Governor." And article 7314a further provides: "It shall be unlawful to move or allow to move any cattle or other live stock from any quarantined district, county, part of county or premises to any other district, county, part of county or premises in manner, method or condition other than those prescribed by the Live Stock Sanitary Commission and proclaimed by the Governor." And article 7314b further provides: "No live stock shall be moved to or from such special quarantined district, pastures or premises in a manner, method or condition other than those prescribed by the Live Stock Sanitary Commission." (Section 3, Acts 1913, page 354.)

Section 2 of the Act of 1913, page 354, is: "That cattle or other live stock may be moved from a quarantined district, county, or part of county, or from quarantined premises into any other district, county, part of county, or premises, under and in compliance with the rules and regulations of the Live Stock Sanitary Commission, as proclaimed by the Governor, but it shall be unlawful to move or allow to move any cattle or live stock from any quarantined district, county, part of county or premises, to any other district, county, part of county or premises, in manner, method or condition other than those prescribed by the Live Stock Sanitary Commission and proclaimed by the Governor."

In St. Louis S. W. R. R. Co. v. Smith, 49 S. W. Rep., 627, it was said by our Fort Worth Court of Civil Appeals that where our Live Stock Sanitary Commission has declared quarantine lines as to animals so as to prevent communication of disease therefrom and has prescribed rules and regulations to make such quarantine effective and the Governor has properly proclaimed them "such lines and such regulations have all the force of law, and, as such, should be obeyed by every class of our citizenship," and it was held in that case that where said commission had quarantined against cattle from Louisiana being shipped

into this State and it had been properly proclaimed by the Governor, that Smith, the plaintiff therein, could not recover from the railroad the value of the cattle shipped by him in violation of that quarantine and proclamation. That case was affirmed by the United States Supreme Court.

In Smith v. State, 74 Texas Crim. Rep., 232, where appellant was convicted for driving his cattle across the quarantine line in violation of the line so established by our said commission; that such line and regulations by the commission was not the exercise of a delegation of the power to legislate; that such authority therefor was contained in the law enacted by the Legislature to that effect, citing several decisions.

In 3 C. J. (Corpus Juris), page 50, it is said: "The authority of the Legislature to enact laws for the protection of domestic animals, and to prevent the spread of infectious or contagious diseases among them, is everywhere recognized as a valid exercise of the police power of the State. Thus the State may prescribe stock quarantine regulations, and may also require its citizens, at their expense, to disinfect their diseased or infected live stock or infected places." In section 148, page 51, it is said: "Under the commerce and police powers both the Federal and State governments may pass quarantine laws for the purpose of isolating diseased or suspected cattle, and thus preventing their communicating disease to other cattle with which they may otherwise come in contact. These laws usually confer authority to establish and maintain such quarantine as may be necessary upon the State Board of Agriculture or Live Stock Commission. In the exercise of the authority thus conferred, such board or commission may make all reasonable and necessary rules and regulations for the enforcement of the law." In section 147, page 51, it is said: "It is within the power of the Legislature to confer upon officers or commissions authority to execute the law and to adopt all needful regulations to that end. Legislation of this character is not a delegation of legislative functions," citing several authorities. Again, in section 182, page 60, it is said that, "in order to render its quarantine legislation effective of the purpose sought to be attained, the State has power to provide punishment for those who violate the law. To this end violation of sanitary and quarantine regulations as, for instance, driving or transporting diseased cattle from one State to another, is frequently made a misdemeanor or a penal offense."

Under these authorities we think the authority given to our Live Stock Sanitary Commission to quarantine live stock and to adopt rules and regulations to enforce the same, when properly promulgated by the Governor, is not the exercise of legislative functions by the commission, and that such rules and regulations so properly promulgated are valid and the violation thereof may be made an offense. This results in holding that the indictment herein was valid in charging an offense.

The decisions holding the pool law void by the majority of this court

and of the Supreme Court and relied upon by appellant, are inapplicable herein.

It has been correctly held under said Tick Eradication and Quarantine Law that the court and jury had to take judicial knowledge of the Governor's proclamation proclaiming such quarantine and the rules and regulations adopted by said commission and that it was not necessary to prove them.    McGee v. State, 81 Texas Crim. Rep., 210.    However, this court and no other is bound to take judicial notice of any rules and regulations adopted by the said commission which have not been proclaimed by the Governor.    In fact, such rules and regulations, even though adopted by the commission are without force and effect unless and until the Governor proclaims them by his proclamation.

In this case doubtless the State and the court below relied upon the proclamation of the Governor described in the information.    We have examined that original proclamation in the office of the Secretary of State.    It in no way proclaims any rule or regulation which had been adopted by said commission.    It simply states that certain counties (naming them), including Concho and Runnels, are hereby declared to be under special quarantine known as the Special Quarantined Area; and in another paragraph, that it shall be unlawful for any cattle, etc., to be moved into, within or from said area until they have been inspected and certified by an inspector of the Live Stock Sanitary Commission or the United States Bureau of Animal Industry.    In another paragraph, that inspectors shall not issue certificates on any of such live stock moved within or from said area unless they have been dipped—one dipping if the stock are free from ticks and two or more dippings with an interval of at least seven days when they are infected with ticks. This proclamation does not proclaim nor purport to proclaim that any or either of said rules and regulations have been adopted by said commission nor are they proclaimed as such, but on the face of the proclamation the Governor himself, without any regard to the commission or any action by it, states therein what we have shown.    The Governor of himself has no power nor authority to adopt any rules and regulations on the subject.    The commission must do this.    His duty is to proclaim, not what he has done, but what the commission has done, in order to put the rules and regulations of the commission in force.

Under this state of the case the trial judge charged the jury in effect that said rules and regulations of said commission were in force and effect in Concho and Runnels Counties, making it unlawful for any cattle to be moved into, within or from Concho to Runnels County until they had been inspected and certified by an inspector of the said commission or the United States Bureau of Animal Industry.    The whole charge of the court was based on the idea that it could and did take judicial knowledge of said proclamation by the Governor and that it proclaimed that the said claimed rules and regulations had been adopted

by said commission. This was all properly excepted to at the time by the appellant and presents reversible error.

If the Live Stock Sanitary Commission had itself adopted the said rules and regulations and the Governor, by said proclamation, had proclaimed that the said commission had done so in his proclamation then an altogether different question would have been presented.

For the error in the court's charge the judgment is reversed and the cause remanded.

*Reversed and remanded.*