# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT THE JUNE TERM, 1872.

## MOODY vs. THE STATE.

[INDICTMENT FOR ILLEGAL VOTING.]

1. *Journals of two houses of general assembly; courts will take judicial notice of, for purpose of ascertaining whether a law was passed in accordance with Constitution.*—The journals of the two houses of the general assembly are public records, of which the courts will take *judicial notice*, and if it appear from said journals that an act was not passed according to the forms of the Constitution, it will be declared not to have the force of law.

2. *Same; when act will be declared void.*—Where a bill originates in one house of the general assembly, and is there passed and sent to the other house, and is there materially amended and said amendments are concurred in by the house in which it originated, but when prepared for the signatures of the presiding officers of the two houses the said amendments are omitted, and it is signed by the presiding officers and approved by the governor without said amendments, such bill does not acquire the force of law, and as an act of the legislature is wholly void.

3. *Act to regulate elections, approved February 26, 1872 ; unconstitutionality of.* The act entitled "An act to regulate elections in the State of Alabama," approved the 26th of February, 1872, (as the same is published in the book of Acts of 1871–72, p. 15,) never acquired the force of law as a constitutional enactment of the general assembly of this State. The said act as published was never passed by the two houses of the general assembly, and is therefore without any validity as a law of this State, and imposes no legal obligation on any body.

4. *Same.*—The bill, having the same title, which passed the two houses was never signed by the presiding officers of the two houses, and was never submitted to the governor for his approval, and for these reasons never acquired the force of law.

APPEAL from the City Court of Mobile.
Tried before Hon. C. F. MOULTON.

The facts are sufficiently stated in the opinion.

CHARLES E. MEYER, for appellant.—I. It is well settled, that courts will, if necessary, look behind a statute to the legislative records to ascertain whether it has a legal existence.—*Jones v. Hutchinson,* 43 Ala. 721.

In the *People v. Mahaney,* (13 Mich. 481,) the court says: " As the courts are bound judicially to take notice of what the law is, we have no doubt it is our right as well as our duty to take notice not only of the printed statute books, but also of the journals of the two houses, to enable us to determine whether all the constitutional requisites to the validity of a statute have been complied with. The printed statute is not even *prima facie* valid when other records, of which the court must equally take notice, show that some constitutional formality is wanting.—See, also, *State v. McBride,* 4 Miss. 303; *DeBow v. People,* 1 Denio, 9; *Bank of Buffalo v. Spencer,* 2 Denio, 97; *Purdy v. People,* 4 Hill, 384; *Spangler v. Jacoby,* 14 Ill. 297; *People v. Supervisors,* 4 Selden, 317; *Cahoon v. Dodd,* 14 Ind. 347; *Burr v. Rosa,* 19 Ark. 350; *Graves v. Green,* 1 Doug. (Mich.) 351.

These constitutional provisions are obligatory; they are not merely directory.—*Jones v. Hutchinson,* 43 Ala. 721; *The People v. Mahaney,* 13 Mich. 481; *Supervisors v. Henan,* 2 Minn. 330; *The Ind. Cen. Railway v. Potts et al.,* 7 Ind. 683.

"Looking behind" the printed statute to "regulate elections in the State of Alabama," pp. 15–36 of the Acts of 1871–72, we find that during the session of the legislature of Alabama which commenced on the 20th day of November, 1871, a bill was originated in and duly passed by the house of representatives, and after such passage was duly transmitted to the senate for its action thereon. In the senate the following material amendments to said bill were passed and adopted.—See Senate Journal, session 1871–72, 506, *et seq.,* 522, *et seq.*

Moody v. The State.

1.  The first section of said house bill was amended by striking out the words "and precincts."

2.  Section thirty-three was amended by adding after the word "election" in the 9th line, the following: "*Provided*, that each challenger who challenges a voter shall, at the close of the election for which he has been appointed or chosen, make out a written report of his challenges during the day, in which shall be stated the names of the voters challenged, a description of his person, and a brief statement of the reasons for which he was made the challenger, and the name or names of the witnesses, if any; which report, when completed, shall be immediately submitted to the county solicitor, who is hereby authorized, and shall, upon the reception of said report, swear said challenger to the contents therein contained, and require his signature to be affixed thereto."

3.  The thirty-fifth section was amended by striking out the words "any member" in the second line, and by inserting in lieu thereof the words "a majority."

Other material amendments were made to the said house bill by the senate, as will appear by reference to the records of the senate.  The bill, with the amendments, was then returned to the house by the senate, for its action thereon, and the house concurred in the amendments of the senate and duly notified the senate of its concurrence in the amendments, and of the passage of the bill as amended by the senate.—Senate Journal, sessions of 1871–72, p. 541.

The bill, as passed by the senate and house, was not properly engrossed and enrolled, but certain of said amendments, including those above set out, which had been made to the original bill by the senate and adopted by the house, were omitted, and said bill, thus erroneously engrossed and enrolled, was signed by the speaker of the house and president of the senate, and approved by the governor and published as the law in the printed acts of 1871–72; and it is for a violation of a provision of this bill (section 39 thereof) that the defendant has been indicted, tried and

convicted, and sentenced to the penitentiary for the term of two years.

"A bill only becomes a law when it has gone through all the forms necessary to give it validity."—*Jones v. Hutchinson*, 43 Ala. 721.

This bill has not gone through the forms made necessary by section 15, of article IV, of the Constitution, because it was not passed by both, or either, houses of the general assembly, as is therein required. It has, therefore, not become a law. The bill that was passed by the two houses of the general assembly was not signed by the speaker of the house or president of the senate, nor approved by the governor. The bill which was signed by the respective officers of the two houses, and approved by the governor, never passed the two houses of the general assembly. The bill, as passed by the two houses, and the bill approved by the governor, are widely variant in substance and in legal effect.—See 2d head-note in *Jones v. Hutchinson, supra*.

II.—The act is repugnant to, and inconsistent with, section 2 of article 7 of the Constitution. That section declares what persons shall be deemed electors in this State, in these words: "Every male person, born in the United States, and every male person who has been naturalized or legally declared his intention to become a citizen of the United States, twenty-one years old or upwards, who shall have resided in the State six months next preceding the election and three months in the county in which he offers to vote, except as hereinafter provided, shall be deemed an elector."

Yet, though a person possessed all the qualifications which the constitution prescribes, and might therefore be deemed an elector by the constitution, section 36 of the act in question would deprive him of the power to exercise the right of an elector, and to vote, unless he had resided *three months* in the precinct in which he offers to vote. By section 36 of this act, when a person offering to vote is challenged by one of the challengers provided for in said act, he is required to take a certain oath therein set out, in

which he must swear that he has resided three months in the precinct. If he does not take this oath he can not vote. The Constitution declares that certain persons shall be deemed electors. The act attempts to prescribe other and additional qualifications than those prescribed in the constitution. Those whom the Constitution declare shall be entitled to vote, the act deprives of that power. In thus prescribing additional qualifications for electors than those laid down in the Constitution, the legislative branch of the government exceeded its powers. The act is inconsistent with, and repugnant to, the Constitution, and is therefore invalid.—*Dorman v. State*, 33 Ala. 216.

JOHN W. A. SANFORD, Attorney-General, *contra.*

PECK, C. J.—At the June term of the city court of Mobile, 1872, the defendant, John Moody, was indicted under section 39 of the act entitled "An act to regulate elections in the State of Alabama," approved February 26, 1872, as the same is printed in the published book of Acts of 1871–72, p. 15, was tried and convicted, and sentenced to be imprisoned in the penitentiary for the period of two years.

The defendant appeals to this court, and by the written agreement of the State, by its solicitor, Alexander McKinstry, by whom the said indictment was preferred, and who prosecuted for the State in said court and tried the said cause, and by the defendant and his counsel, the record is filed and the cause submitted for the decision of this court, as though the appeal had been taken to the present term.

The defense made in said city court was, that the said act had not the force of law, because the said act as published was not passed by both houses of the general assembly, as required by section 15, article IV, of the Constitution; and that the bill, having the same title, which passed both houses was never signed by the speaker of the house and president of the senate, and was not presented to the

governor for his approval, &c.; that the said bill, as it passed the two houses, is materially variant in substance and legal effect from the said published act.

We are gratified to know that the question here presented is not one of first impression in this court. The same question, in all essential respects, arose in the case of *Jones v. Hutchinson*, and was decided by our immediate predecessors at the June term, 1868, and is reported in 43 Ala. 721.

In that case the court say, "It is undeniably true, that a bill becomes a law *only* when it has gone through all the forms made necessary by the Constitution to give it validity."

The court also say, that the bill in that case, which was signed by the speaker of the house and president of the senate, and which, after being so signed, was presented to and approved by the governor, was not the bill which had been passed by the two houses; that the bill which was passed by the two houses was never signed by the speaker and president of the respective houses, and was never presented to the governor for his constitutional action thereon. It was also said in that case to be well settled, that the courts could, and if necessary would, look behind the printed statute to the legislative records to ascertain whether it had a legal existence.

Now, on examination of the legislative records in this case, (the journals of the two houses,) we find that the bill "to regulate elections in the State of Alabama," originated in the house, and was there passed, substantially, in the form of said published act, and on the 14th day of February, 1872, was sent to the senate without being engrossed. Senate Journal, p. 458.

That on the 20th day of said month the said bill was there taken up, read twice forthwith, under suspension of the constitutional rule, and made the special order for 11 o'clock on the next day. On that day the senate entered upon the consideration of said bill, and some twenty-five or thirty amendments were made to the same, materially

changing the character and legal effect of said bill, and on the 23d day of said month said bill, so amended, was read the third time and passed.—Senate Journal, p. 524.

On the 24th day of the same month the said bill, as amended by the senate, was taken up in the house of representatives, and all the amendments of the senate were concurred in and passed by said house.—House Journal, page 560.

After this, in preparing the said bill to be signed by the presiding officers of the two houses, and to be presented to the governor, &c., whether from carelessness or from some cause less excusable, the said amendments, or the most material of them, were left out and altogether omitted in the engrossed or enrolled copy thereof, and, with said omissions, was signed by the speaker and president of the senate, sent to and approved by the governor, as the bill which had passed the two houses respectively.

These facts being established by the journals of the two houses, the said bill, so signed by the presiding officers of the two houses and approved by the governor, and published in the said book of acts, never acquired the force of law.—Sections 15 and 16, article IV, of the Constitution. It is, as a law, wholly void, a mere nullity, and imposes no legal obligation on any body. Mr. Cooley, in his book on Con. Lim., p. 135, says, speaking of legislative proceedings, "Each house keeps a journal of its proceedings, which is a public record, and of which the courts are at liberty to take *judicial notice.* If it should appear from the journals that any act did not receive the requisite majority, or that in respect to it, the legislature did not follow any requirement of the Constitution, or in any other respect the act was not constitutionally adopted, the courts may act upon the evidence, and adjudge the statute void."

On the authority of this author, and the cases cited by him, and on the case of *Jones v. Hutchinson, supra,* we have no hesitation, and we feel it our bounden duty, to declare the said act "to regulate elections in the State of Alabama," as it is published as aforesaid, altogether void; and that

the said bill, as it passed the two houses, never having been signed by the presiding officers of the two houses, nor approved by the governor, never acquired the force of law.

The said act being void, it follows, that the indictment under which the defendant was convicted is also void, and the sentence and judgment of the court on the same are erroneous and must be reversed, and the defendant discharged.

The clerk will certify the judgment in this behalf to the city court of Mobile, with instructions to discharge the defendant out of custody.