**HOLMAN, County Judge, et al. v. PABST et al.**
**No. 9469.**

Court of Civil Appeals of Texas. Galveston.
March 27, 1930.

Rehearing Denied April 10, 1930.

Owen D. Barker, Fine G. Bedford, and Williams, Neethe & Williams, all of Galveston, for appellants.

Brantly Harris and David Watkins, both of Houston, for appellees.

GRAVES, J.

Appellants, as the county judge and members of the commissioners' court of Galveston county, appeal from a judgment in mandamus, commanding them in their official capacities "at the next meeting of said Court to order an election as prayed for in said petition (of the appellees, two freeholding tax paying citizens of the county) to be held throughout Galveston County, as soon as the requisite thirty-day notice can be given, for the purpose of determining: (1) Whether hogs, sheep and goats shall be permitted to run at large in said County, as a whole, and (2) whether horses, mules, jacks, jennets and cattle shall be permitted to run at large in said County, as a whole, and to hold said election as ordered herein, taking every step required by law in ordering and holding said election."

Affirming their right as such officials, by reason of their legal duty of handling and disbursing the county's funds, to challenge the validity of House Bill No. 120, enacted at the First Called Session of the 41st Legislature (General and Special Laws, 41st Legislature, First Called Session, p. 185, c. 71), and Senate Bill No. 22 (General Laws, Third Called Session, 41st Legislature, c. 8, p. 240 [Vernon's Ann. Civ. St. § 6954]) the two statutes held by the trial court—without inquiring into the question of whether or not they were valid and subsisting legislative acts—to have on the face thereof peremptorily required the ordering and holding of the election for the second of these designated purposes, they contend that neither act is sufficient for the purpose for the reasons:

"(1) The pre-existing law applicable to Galveston county, R. S. art. 6954, required that the petition of request for such an election to the Commissioners' Court be signed by at least twelve freeholders from each justice precinct in the county, which indispensable prerequisite undisputedly was not in the petitions for the election here so ordered, and the caption of House Bill No. 120 "does not disclose any purpose to amend the existing statutes so as to omit the requirement that

petitions to the Commissioners' Courts for such elections must be signed by at least twelve (12) freeholders from each justice precinct in the county;"

"(2) The instrument found on file in the office of the Secretary of State and purporting to be Senate Bill No. 22, cannot be considered as a duly enacted law, because the same is not authenticated in the manner required by the Constitution for the authentication of bills finally passed by the legislature, in that it does not bear the signature of the Speaker of the House of Representatives."

Additional presentments are to the effect that the trial court in so granting the writ further erred: (1) In refusing to pass upon the legal sufficiency of the cited acts upon the holding "that respondents have no right to question the constitutionality of the law providing for the ordering and holding of said election, but it is the legal duty of said respondents to order and hold an election as requested in said petitions," and (2) in ordering a single election for the submission of both specified propositions in response to the appellees' petition that prayed only for that, when it affirmatively appears, under the facts shown, that the submission of one of such propositions was not authorized by law.

As concerns the first-mentioned purpose—that pertaining to hogs, sheep, and goats—appellants concede that the writ was not authorized under other statutes, R. S. art. 6930 et seq., if their stated objection that appellees only prayed for one election be not good.

The procedural facts being all undisputed, appellees join issue as to the legal sufficiency of any of these assigned grounds for reversal, insisting (1) that both House Bill No. 120 and Senate Bill No. 22 were such valid amendments of article 6954 of 1929 (Vernon's Ann. Civ. St. § 6954) as eliminated its requirement that the petition in this instance be signed by at least twelve freeholders from each justice precinct in Galveston county, (2) that appellants—being without personal or property rights at stake—were not in position to excuse their failure to perform the purely ministerial duty enjoined by the statutes invoked against them by responding that such requirements were invalid, and (3) that their own pleadings were clearly sufficient, as not being properly construed as praying for one election for two distinct purposes.

■ We agree with appellants, save in the view that the writ of mandamus should be denied effect as to both objectives, because appellees prayed for one election at which there should be submitted the two propositions, one of which was affirmatively shown to be unauthorized by law; in the state of the record that construction, we conclude, may not properly be given the petition; it did not request nor pray for *one* election, rather *an* election for two separately and specifically-stated purposes, after averring all the facts alleged to entitle them to the relief sought, and no special exceptions were directed against this manner of statement—only a general demurrer; when given the benefit of every reasonable intendment, the pleading is at least susceptible of the interpretation that they meant an election for each of the specified purposes; had appellants desired more particular information as to what was sought, they should have required it by specially demurring.

This holding, in view of appellants' concession on that phase of the case, eliminates further consideration of whether the writ was authorized as to the election to determine whether hogs, sheep, and goats should be permitted to run at large—obviously it was.

■ That it was not authorized as the means of bringing about an election for the other purpose—that affecting horses, mules, etc.—seems to us equally obvious for all the reasons so quoted with approval; as before indicated, all the other facts that raise this issue between the parties being undisputed, the only claim appellees make for the contrary conclusion—aside from their insisting that appellants could not challenge the validity thereof—is that House Bill No. 120 and Senate Bill No. 22, each in its turn, eliminated this pre-existing requirement of R. S. art. 6954 (General and Special Laws of 41st Legislature, Regular Session, p. 9, c. 5 [Vernon's Ann. Civ. St. § 6954]): "Where there is an application for an election to include an entire county there shall not be less than twelve freeholders from each justice precinct of said county as signers to the petition for such election." In the body thereof both these purported acts had that effect, but the caption of No. 120 fails either to include Galveston county therein, or to otherwise give any notice of an intention to eliminate the twelve freeholders from each precinct requirement, while No. 22 does not bear the signature of the speaker, both therefore being void; the caption of No. 120 is as follows:

"H. B. No. 120. Chapter 71.

"An Act amending Article 6954, Chapter 6, Title 121 of the Revised Civil Statutes of Texas, 1925, as amended in Chapter 245 of the Acts of the Regular Session of the 40th Legislature of Texas, and as amended in Chapter 5 of the Acts of the Regular Session of the 41st Legislature of Texas, with reference to the mode of preventing horses and certain other animals from running at large in the counties named so as to include in said Article the counties of Archer, Briscoe, Brooks, Chambers, Fort Bend, Goliad, Gray, Hutchinson. Jeff Davis, Jim Hogg, Leon, Live Oak, Montgomery, Polk, Marion, Potter, Panola, Runnels, San Jacinto, Shackelford,

Shelby, Terrell, Throckmorton, Uvalde, Walker, Waller, Webb, Zapata, and Zavala, and declaring an emergency."

It is true the briefs of both sides recite that Galveston is included among the counties named in this caption, but such is undisputedly not the fact, what is here quoted being its precise verbiage as appears alike from the certified copies of the bill itself and of the printed acts of the session enacting it, which are attached as exhibits Nos. 11 and 14 to the statement of facts under the written agreement of the parties that both are correct.

In this state of the particular facts here obtaining, this court does not regard as even debatable the question as to the sufficiency of the title of this act, but holds it to have been foreclosed by the decision of our Supreme Court in Ward v. Carpenter, 109 Tex. 103, 200 S. W. 521; see, also, Arnold v. Leonard, 114 Tex. 535, 273 S. W. 799; Bitter v Bexar County (Tex. Com. App.) 11 S.W.(2d) 163.

█ As concerns the soundness of the holding that purported Senate Bill No. 22 is invalid because not carrying the signature of the Speaker of the House of Representatives, we are also clear; as to it, the photostatic copy of the bill itself, under certificate of the Secretary of State, attached as Exhibit No. 9 to the statement of facts, under like agreement of the parties here that it is correct, discloses that the original bill on file in that official's office—its required depository—does not bear the signature of the Speaker; it is true there also appears as an exhibit to the statement of facts a photostatic copy of an excerpt from the House Journal reciting, "The Speaker signed, in the presence of the House after giving notice thereof and their captions had been read severally, the following bills," among which appears the caption of a Senate Bill No. 22 corresponding to the caption upon the instrument now in the secretary of state's office and here under discussion, but this affirmative showing that it did not bear the signature of the Speaker nullifies the bill notwithstanding such recital in the House Journal, because the Constitution expressly and mandatorily requires both in this provision:

"The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature, after their titles have been publicly read before signing; and the fact of signing shall be entered on the journals." Constitution of Texas, art. 3, § 38; Williams v. Taylor, 83 Tex. 667, 19 S. W. 156; State v. Cahill, 12 Wyo. 225, 75 P. 433; Hunt v. State, 22 Tex. App. 396, 3 S. W. 233; Ex parte Tipton, 28 Tex. App. 438, 13 S. W. 610, 8 L. R. A. 326; George Bolln Company v. North Platte Valley Irrigation Company,

19 Wyo. 542, 121 P. 22, 39 L. R. A. (N. S.) 868; Scarbrough v. Robinson, 81 N. C. 409; State v. Glenn, 18 Nev. 34, 1 P. 186; State v. Mickey, 73 Neb. 281, 102 N. W. 679, 119 Am. St. Rep. 894; Lynch v. Hutchinson, 219 Ill. 193, 76 N. E. 370, 4 Ann. Cas. 904; State v. Lynch, 169 Iowa, 148, 151 N. W. 81, L. R. A. 1915D, 119.

Under the cited authorities, these two requirements of our Constitution are clearly not only for separate and distinct purposes—that as to the journal entry being to merely authenticate, not to supply, the signature of the presiding officer upon the bill, the other, that is, the one providing that he shall sign it, being the means specified for identifying the measure as the one before the House at the time to which the journal entry relates, and the one referred to in that entry as having been so signed—but also are mutually and equally mandatory; such is the logic of those holdings, as we read them, and it is in consequence so here declared.

█ That appellants, constituting as they did the governing body in all Galveston county's varied public business, although having no personal pecuniary interest to be affected, and despite the fact that calling the election may have constituted only a ministerial act or duty, were not beyond the pale of proper privilege in challenging the constitutional validity of two alleged acts of the Legislature, in virtue of which alone it was sought to control their official action by so drastic a proceeding as the writ of mandamus, is not, we think, to be doubted, notwithstanding the existence of such cases as State v. State Board of Equalization, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362; State v. Heard, 47 La. Ann. 1679, 18 So. 746, 47 L. R. A. 512; and Threadgill v. Cross, 26 Okl. 403, 109 P. 558, 138 Am. St. Rep. 964, seemingly holding otherwise; the contrary view, upon what we regard as much the better reason, has been applied in these decisions; Huntington v. Worthen, 120 U. S. 97, 7 S. Ct. 467, 469, 30 L. Ed. 588; Van Horn v. State, 46 Neb. 62, 64 N. W. 365; Hindman v. Boyd, 42 Wash. 17, 84 P. 609; State v. Candland, 36 Utah, 406, 104 P. 285, 24 L. R. A. (N. S.) 1260, 140 Am. St. Rep. 834.

█ The rationale of these last-cited holdings is that, as an unconstitutional act of the Legislature is no law at all, the courts have no power to compel any one—much less a public body or officer—to obey it; by all the authorities, a writ of mandamus to compel a public officer or body to perform some act or duty will not issue unless and until it is shown that the performance thereof is clearly imposed by law upon him or it, and that a correlative legal right to have it performed is vested in the applicant for the writ; Arberry v. Beavers, 6 Tex. 467, 55 Am. Dec. 791; Johnson v. Elliott (Tex. Civ. App.) 168 S. W. 968; Williams v. Taylor, 83 Tex. 667, 19 S. W.

156; Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699.

Obviously, therefore, it seems to us, the court in this instance had to determine what the actually existing statutory law was on the subject before it could possibly determine whether or not any such official duty, as was claimed, had been imposed.

Further discussion is deemed unnecessary; these conclusions require that so much of the trial court's judgment as ordered the election to be held for the purpose of determining, "(1) Whether hogs, sheep, and goats shall be permitted to run at large in said county as a whole" should be affirmed, and that so much of it as required the election to be held for the purpose of determining, "(2) Whether horses, mules, jacks, jennets, and cattle shall be permitted to run at large in said county as a whole," etc., should be reversed and the cause of action alleged in that respect rendered in favor of appellants. It will be so ordered.

Affirmed in part.

Reversed and rendered in part.

#### On Motion for Rehearing.

Two recitations as of fact in the original opinion are presented as having induced error: (1) that Galveston county was not included in the caption of House Bill No. 120 [Gen. & Sp. Laws, 41st Leg. (1929) 1st Called Sess. p. 185, c. 71]; (2) that Senate Bill No. 22 (Gen. Laws 41st Leg. [1929] 3rd Called Sess. p. 240, c. 8 [Vernon's Ann. Civ. St. § 6954]) itself—as on file in the office of and certified to by the secretary of state—did not have the signature of the Speaker. It is now urged that Galveston county had already been brought within R. S. article 6954 by Senate Bill No. 60, passed at the regular session of the 41st Legislature (Gen. & Sp. Laws [1929] p. 9, c. 5 [Vernon's Ann. Civ. St. § 6954]) and that this certified copy of Senate Bill No. 22 was not shown to be a correct copy of the bill that was finally passed.

While we before followed verbatim the mutual statements in the briefs, it does appear that Galveston county had been put under the operation of article 6954 at the previous regular session before House Bill 120 was enacted at the ensuing called session of the same Legislature, hence it was unnecessary for it to have been again named in the caption of the latter act; but that was only one of the considerations upon which our former conclusion that it was invalid rested, the main one being that its caption presaged no intention to amend the existing law in any other way than to include within its operation the several newly designated counties; unconvinced of error in that view, it will be adhered to.

The other presentment, we think, is equally without merit; appellants are not in position to now challenge Senate Bill 22, so certified under their agreement that it correctly reflected the measure on file in the secretary of state's office, as not being the bill that the Legislature acted upon, never having raised any such objection in the trial court, especially since the language of the certificate they thus vouch for—as shown by Exhibit No. 9 to the statement of facts—is: "the foregoing is a true and correct copy of Senate Bill 22 passed at the Third Called Session of the 41st Legislature."

The motion for rehearing will be overruled.

Overruled.