

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

July 22, 1959

Dr. L. R. Noyes, Executive Director
Livestock Sanitary Commission of Texas
3320 West Seventh
Fort Worth 7, Texas

Opinion No. WW-670

Re: Authority of the Livestock
Sanitary Commission to quar-
antine hides from diseased
animals to prevent transmis-
sion of disease, under Arti-
cle 1525b, Vernon's Penal
Code.

Dear Dr. Noyes:

We quote from your letter relative to the above sub-
ject:

"Recently an outbreak of anthrax occurred
among cattle, in feed pens, in the Rio Grande
Valley. One of the animals that died was removed
to a slaughtering plant; the carcass prepared for
sale for human consumption, and the hide placed
in the vat. Disposition of the carcass was made
by the State Department of Health.

"This Commission quarantined the hide from
the diseased animal, as well as contact hides, to
prevent the dissemination of disease.

"Other animals that died were moved to a
rendering plant in the vicinity and tankage from
the infected, as well as other dead animals, was
processed and distributed to several individuals
for feeing livestock.

"Question 1, Does this Commission have authority,
under Section 5, or any other Section of 1525b
Vernon's Annotated Penal Statutes, to quarantine
hides from diseased animals, as well as contact
hides at slaughtering establishments and render-
ing plants, to prevent transmission of disease?

"Question 2, May this Commission quarantine rendering plants and require cleaning and disinfection, under supervision of a representative of the Department?

"Question 3, Does this Commission have authority to require rendering plants to pick up and reprocess tankage which the Commission has reason to believe is an agency for the transmission of disease?"

The Texas Constitution declares in Section 23 of Article XVI:

"The Legislature may pass laws for the regulation of live stock and the protection of stock raisers . . ."

The Legislature has authority under the State's police power to create the Livestock Sanitary Commission and to empower it to establish, maintain and enforce quarantines authorized by law as it may deem necessary, as well as power to authorize the Commission to make reasonable rules and regulations to prevent the spread of contagious disease among live stock. Mulkey v. State, 83 Tex.Crim. 1, 201 S.W. 991 (1918); Gandy v. State, 87 Tex.Crim. 197, 220 S.W. 339 (1920).

Section 1, Article 1525b, Vernon's Texas Penal Code, provides in part as follows:

"It shall be the duty of the Live Stock Sanitary Commission . . . to protect all cattle, horses, mules, asses, sheep, goats, hogs, and other live stock, and all domestic animals and domestic fowls of this State from infection, contagion or exposure to the infectious, contagious and communicable diseases enumerated in this Section, to-wit: . . . anthrax . . . Said Commission may at its discretion whenever it is deemed necessary or advisable also to engage in the eradication and control of any disease of any kind or character that affects animals, live stock, fowls, or canines regardless of whether said diseases are infectious, contagious or communicable and may establish necessary quarantines for said purpose. It shall be the duty of the Commission . . . to establish quarantines within the State of Texas on cattle, horses, mules, asses, sheep, goats, hogs

Dr. L. R. Noyes, page 3.          (WW-670)

and other live stock, domestic animals and
domestic fowls, also counties, districts, areas,
premises, lands, pastures, lots, ranches, farms,
fields, ranges, thoroughfares, buildings, barns,
stables, stock yards pens and other places when-
ever said Commission ascertains that any of said
diseases or the agency of transmission thereof
exist in any of said places or among any of said
live stock, domestic animals or domestic fowls,
or that any of said places, live stock, domestic
animals or domestic fowls are exposed to any of
said diseases or to the terms or agency of trans-
mission of any of said diseases.  Said Commission
shall adopt rules and regulations to be proclaimed
by the Governor of the State of Texas for the pur-
pose of carrying out and enforcing the provisions
of this  Act.  . . ."

Section 2 of the Statute reads in part as follows:

"Whenever it is determined by Veterinarians
in the employ of the Live Stock Sanitary Commis-
sion that any contagious, infectious or communica-
ble disease exists among any live stock . . . on
any land or premises or other places, or that any
live stock . . . premises or other places have
been exposed or are exposed to the agency of trans-
mission of any infectious, contagious or communica-
ble disease, such exposure or infection shall be
considered as continuing until the Live Stock Sani-
tary Commission has eradicated the same through its
prescribed methods under authority of law and of
the rules and regulations of the Live Stock Sani-
tary Commission.  . . . "

In Section 5 of the Statute, it is provided in part:

"The Live Stock Sanitary Commission may es-
tablish necessary quarantines for prohibiting or
regulating the movement of any commodity or article
. . . that the said Commission may ascertain to be
carriers of any of the diseases mentioned in this
Act whenever any of said diseases or exposure there-
to exist in the Nation, State, territory or area
to be quarantined.  . . ."

Clearly, the Livestock Sanitary Commission is auth-
orized under the authorities cited above to quarantine slaught-
ering establishments, rendering plants, tankage and hides from

diseased cattle, as well as hides which come in contact with such hides at slaughtering establishments and rendering plants. This assumes, of course, that the Commission has first made a valid determination that such articles and places are infected with anthrax or have been exposed to such infection or the agency of its transmission.

It is also apparent from the foregoing authorities that the Commission may require disinfection under supervision of a representative of the Commission. But, by "require" we mean no more than that the Commission may condition the removal of the quarantine upon such disinfection. That such disinfection is to be by or under the supervision of a representative of the Commission is seen from the portion of Section 2 quoted above wherein exposure or infection of a place is said to be considered as continuing "until the Live Stock Sanitary Commission has eradicated the same." Also, the same Section provides, "In the trial of any case involving the compliance or non-compliance . . . with any provision of law requiring . . . disinfecting . . . it shall not be permissible to prove that the same was done by anyone except an authorized representative of said Commission.  . . ."

However, the Commission does not, in our opinion, have authority to require rendering plants to pick up infected tankage. To subject a business to quarantine until its premises are decontaminated is one thing and to require it to disinfect someone else's premises by retrieving an infected product is another. We find no statutory authorization for requiring the latter.

In Article 1525b, Vernon's Texas Penal Code, the Commission is charged with the duty to "protect" domestic animals from anthrax and to engage in its "eradication and control." However, holding that the Commission thus acquired power to make a rule and regulation requiring a business to pick up its products based on this broad statement of general duty would run afoul of the constitutional inhibition against the delegation of legislative authority without setting definite guides or standards. Tex. Const., Art. III, Sec. 1; Williams v. State, 146 Tex. Crim. 430, 176 S.W.2d 177 (1943); 3 Tex.Jur.Supp. 167, Const. Law, Sec. 68.

According to Section 1 of the Statute, the rules and regulations made by the Commission are to "carry out" and "enforce" the "provisions" of the Act. The "provisions" of the Act only permit disinfection by the Commission and quarantine of the article or place until disinfection has occurred. The

remedy afforded the Commission against persons who move infected products is by quarantine and criminal prosecution for moving the article in violation of the quarantine and laws requiring persons to destroy the carcass of a diseased animal. Compelling repossession of infected articles is nowhere authorized in the statutes, either expressly or by implication.

Whether reprocessing tankage is a reasonable and proper means of disinfecting the tankage and the premises where it is located is a fact question. But, if this reprocessing is necessary to remove the infection, there is no doubt that under Article 1525b, Vernon's Texas Penal Code, such may be required to be done under the supervision of a representative of the Commission as a prerequisite to the removal of a quarantine on the tankage or place.

Accordingly, questions 1 and 2 are answered in the affirmative, and question 3 is answered in the negative.

## S U M M A R Y

The Livestock Sanitary Commission has authority to quarantine hides, tankage, rendering plants and slaughtering establishments, as well as to require disinfection of such articles and places under the supervision of a representative of the Commission where the Commission has made a valid determination that said articles and places are infected with anthrax or have been exposed to such infection or the agency of its transmission. Reprocessing of such tankage may be required to be made under the supervision of a representative of the Commission if such reprocessing is necessary to such disinfection.

But, the Commission is not auth-
orized to require a rendering plant
to retrieve products which have left
the plant.

Yours very truly,

WILL WILSON
Attorney General of Texas

By *Henry G. Braswell*

Henry G. Braswell
Assistant

HGB:mfh:zt

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman

J. Arthur Sandlin

Jot Hodges, Jr.

Marvin H. Brown, Jr.

REVIEWED FOR THE ATTORNEY GENERAL
BY:  W. V. Geppert